**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| NATHAN L. ADAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:19-cv-02179-TWP-MJD |
| ) | |
| GRANT STEVENS, Officer , MELANIE ) | |
| BURNS, Officer, JUSTIN DAVIS, Officer, ) | |
| JACQUCLINE[1] HIBBARD, Officer, BRUCE ) | |
| SLINKARD, Officer, ALEXANDER SHAW, ) | |
| Sergeant, BRANTLEY FERGUSON, Sergeant, ) | |
| KYLE MCKINNEY, Sergeant, RICHARD ) | |
| COLESTOCK, Sergeant, STEVEN REYNOLDS, ) | |
| Sergeant, JACOB REED, Sergeant, and DAVID ) | |
| MASON, Captain, ) | |
| ) | |
| Defendants. ) | |

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANTS' CROSS-MOTION FOR PARTIAL
SUMMARY JUDGMENT**

This matter is before the Court on the parties' cross motions for summary judgment. Plaintiff Nathan L. Adams ("Adams"), an Indiana inmate, initiated this 42 U.S.C. § 1983 action, alleging the Defendants violated his civil rights by depriving him of breakfast from March 2017 through July 2017. On August 4, 2020, Adams filed a Motion for Summary Judgment on his claims against Defendants Grant Stevens, Melanie Burns, Justin Davis, Jacqueline Hibbard, Bruce Slinkard, Alexander Shaw, Brantley Ferguson, Kyle McKinney, Richard Colestock, Steve Reynolds, Jacob Reed, and David Mason. (Dkt. 97.) On September 2, 2020, Defendants Hibbard, Shaw, McKinney, Colestock, Mason, Reynolds, Reed, Slinkard, Burns and Davis (collectively "the Defendants"), filed a Response to Plaintiff's Motion for Summary Judgment and Cross Motion

---

[1] Defendant Hibbard's first name is actually spelled Jacqueline (*see* Dkt. 21 at 2).

for Partial Summary Judgment, arguing that they were not personally involved in the alleged deprivation of Adam's constitutional rights, thus they are entitled to summary judgment in their favor. (Dkt. 103; Dkt 104.) Also before the Court is Plaintiff's Motion for Ruling on Unopposed Summary Judgment, (Dkt. 107). For the following reasons Adams' Motions are **denied** and Defendants' Cross-Motion is **granted**.

## I.  SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A motion for summary judgment asks the court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Federal Rule of Civil Procedure 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the

suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

These same standards apply even when each side files a motion for summary judgment. The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003). The process of taking the facts in the light most favorable to the non-moving party, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citation and quotation marks omitted).

## II. FACTUAL BACKGROUND

Adams is an offender in the custody of the Indiana Department of Correction, housed at Pendleton Correctional Facility ("Pendleton"). He filed grievances on March 13, 2017 through April 2017, complaining that Correctional Officer B. Martz had filed a false Report of Conduct against him. (Dkt. 98-1 at 1-10.) Adams asserts that thereafter, he was regularly denied breakfast, causing him sleep deprivation, pain, headaches, and dizziness, among other things. (Dkt. 99 ¶ 25.)

On April 20, 2017, Adams submitted an informal grievance, alleging that he was forbidden from entering the dining hall and his request that a food tray be provided to him in his housing unit was denied. (Dkt. 98-1 at 11.) On April 25, 2017, Mason responded to the informal grievance, indicating that his investigation of the incident revealed that Adams had voluntarily chosen to return to his dorm after being told to walk, not run, on the walk to the dining hall, and had not requested a tray once he returned to his housing unit. *Id.* On May 1, 2017, Adams filed a formal grievance, disagreeing with Mason's response that he had been running on the walk to the dining hall, and asserting that he did request a tray once he returned to his housing unit. *Id.* at 12. On May 17, 2017, Adams filed a grievance appeal. *Id.* at 14.

On May 14, 2017, Adams filed an informal grievance, alleging that he was denied a breakfast meal that day. *Id.* at 18. On May 17, 2017, Mason responded to Adams' May 14, 2017 informal grievance, indicating that he had advised staff that if an offender was denied entry to the dining hall, a tray was to be ordered for him in his housing unit. *Id.* On May 24, 2017, Adams filed a formal grievance. *Id.* at 19.

On June 21, 2017, Adams filed a grievance appeal in which he stated, "[f]orcing me to starve and go without meals every morning is cruel and unusual punishment." *Id.* at 25.

On June 29, 2017, Adams filed an informal grievance alleging that he was denied a breakfast meal that morning. *Id.* at 33. On July 11, 2017, a response was provided to this informal grievance, stating "no knowledge of this incident." *Id.* On July 14, 2017, Adams filed a formal grievance. *Id.* at 34.

In his deposition testimony, Adams testified that he did not know whether Defendants Shaw, McKinney, Colestock, Reynolds, Reed, Slinkard, or Davis were ever personally involved in denying him breakfast. (Dkt. 103-1.) He learned of these Defendants' names through a response to a records request dated March 19, 2018, requesting the "full names of the K-bracket yard staff working breakfast lines and/or any Ofc. that helped in March-July of 2015." (Dkt. 103-1; Dkt. 103-2; Dkt. 103-3.) Mason never denied Adams breakfast. (Dkt. 103-1 at 15.)

### III.  DISCUSSION

Adams asserts that the Defendants' actions of depriving him of breakfast from March 2017 through July 2017, constituted retaliation in violation of his First Amendment rights, subjected him to unconstitutional conditions of confinement in violation of his Eighth Amendment rights, and amounted to discrimination in violation of the Fourteenth Amendment. The Court will first address Adams' Motion for Summary Judgment before turning the Defendants' Cross-Motion.

A. **Adams' Motion for Summary Judgment**

   1. **Personal Involvement**

Defendants Shaw, McKinney, Colestock, Mason, Reynolds, Reed, Slinkard, and Davis seek summary judgment arguing that there is no evidence they were personally involved in denying Adams breakfast trays. "Individual liability under § 1983… requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)

5

("Section 1983 creates a cause of action based on personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.... A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary.")).

Defendants Shaw, McKinney, Colestock, Reynolds, Reed, Slinkard, and Davis argue that Adams' admissions at his deposition that he could not recall specifically that they denied him breakfast, show that they are not liable for any retaliatory actions towards Adams.

In his brief, Adams contends that the deposition jogged his memory and he now remembers hearing Stevens saying, "snitches that put in grievances don't get to eat." (Dkt. 99 ¶ 29.) Adams also recalls Burns yelling out "snitch" from the doorway to the breakfast hall. (Dkt. 99 ¶ 30.) Adams has also submitted affidavits from three offenders who heard staff members calling Adams a snitch, and telling him that he could not eat breakfast, (Dkt. 98-1 at 39–46), however, those affidavits fail to identify any of the named Defendants as the officers who denied Adams breakfast. *Id.*

The Court determines that Adams' arguments fail, because he has not produced specific evidence that defendants Shaw, McKinney, Colestock, Reynolds, Reed, Slinkard, or Davis personally denied him breakfast, these Defendants are entitled to summary judgment.

Concerning Defendant Mason, he argues that he is entitled to summary judgment because he was not personally involved in the alleged breakfast denials. It is undisputed that Mason was not present when Adams was denied breakfast, but Adams contends that Mason is liable because he "failed to manage his officers." (Dkt. 103-1.) The evidence regarding Mason's involvement in the alleged denial of breakfast to Adams is that he responded to two of Adams' grievances. On the

first, he found that Adams had not requested a tray after returning to his unit and on the second, he ordered that staff should provide a tray to any offender unable to enter the dining hall.

Mason also argues that he cannot be held liable for the inactions of his subordinates. Under § 1983, mere "knowledge of a subordinate's misconduct is not enough for liability." *Vance v. Rumsfeld*, 701 F.3d 193, 203 (7th Cir. 2012) (en banc). Indeed, "inaction following receipt of a complaint about someone else's conduct is [insufficient]." *Estate of Miller by Chassie v. Marberry*, 847 F. 3d 425, 428 (7th Cir. 2017). Mason's responses to Adams' two grievances were reasonable in light of the information available to him.

The Court agrees. There is no evidence that Mason personally participated in the alleged deprivations, accordingly, he also is entitled to summary judgment.

## 2. Eighth Amendment Claims against Defendants Burns and Hibbard

Adams seeks summary judgment on his Eighth Amendment claims against Defendants Burns and Hibbard. In order to hold Hibbard and Burns liable for an alleged violation of Adams' Eighth Amendment right to receive adequate food, Adams "must demonstrate that the deprivation suffered was, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970. To prove that his Eighth Amendment rights were violated, he must show that the Defendants were deliberately indifferent to conditions that denied him the "minimal civilized nature of life's necessities, creating an excessive risk to [his] health and safety." *Isby v. Brown*, 856 F.3d 508, 521 (7th Cir. 2017) (internal citations and quotation omitted).

Adams argues that the deprivation of food caused him significant pain and suffering. Defendants note that Adams has submitted no documentary or tangible evidence, such as medical records or requests for health care, documenting any symptoms of food deprivation that would suggest Adams was subjected to a substantial risk of serious harm. (Dkt. 104 at 13.) They argue

7

that although Adams alleges that he suffered serious health consequences as a result of being denied breakfast meals, Adams admits that he was never seen by medical staff for alleged food deprivation, and never requested to be seen. (Dkt. 103-1 at 26.) Thus, Defendants argue, Adams has not presented sufficient evidence that the deprivation was ongoing.

Moreover, amongst all of the grievance documents submitted by Adams, only three specific dates of alleged breakfast deprivation were identified—April 20, 2017, May 14, 2017, and June 29, 2017. The Defendants argue that the grievance records reflect that Adams voluntarily returned to his dorm without eating on one occasion, (Dkt. 98-1 at 11), housing unit staff were ordered to provide trays to offenders who did not eat in the dining hall, (Dkt. 98-1 at 18), and the responding staff had no knowledge of the deprivation on another alleged occasion, (Dkt. 98-1 at 33).

Here, there is a dispute of fact regarding whether Adams was denied the "minimal civilized nature of life's necessities." *Isby*, 856 F.3d at 521. While Adams contends that he was regularly denied breakfast, he has only identified three specific instances of such denial. Construing the facts in the light most favorable to the Defendants, a reasonable jury might conclude that the alleged denial on these three isolated occasions was not enough to violate his Eighth Amendment rights. Because there is a genuine issue of material fact, Adams is not entitled to summary judgment on his Eighth Amendment claims.

### 3.     **Retaliation Claims against Defendants Hibbard and Burns**

Adams alleges that Hibbard and Burns denied him breakfast in retaliation for filing grievances against another Pendleton staff members. He seeks summary judgment on his claim that he was retaliated against for his filing of grievances. To prevail on a First Amendment retaliation claim, a plaintiff must show that "(1) []he engaged in activity protected by the First

Amendment; (2) []he suffered a deprivation that would likely deter First Amendment activity; and (3) the protected activity []he engaged in was at least a motivating factor for the retaliatory action." *Archer v. Chisholm*, 870 F.3d 603, 618 (7th Cir. 2017) (internal citations omitted).

It is undisputed that Adams' grievances were activities protected by the First Amendment. But the Defendants argue that there is a dispute of fact regarding how often Adams was denied breakfast and, therefore, there is a dispute of fact regarding whether he suffered a deprivation that would likely deter First Amendment activity. The Court agrees. Because there are disputes of fact regarding the second element of Adams' retaliation claim, Adams is not entitled to summary judgment.

### 4. Equal Protection Claims

Finally, Adams seeks summary judgment on his Fourteenth Amendment equal protection claim. The Defendants mistakenly argued that Adams was not permitted to proceed with an equal protection claim in the Court's screening order. However, in the Order of July 1, 2019, the Court acknowledged that Adams had stated an equal protection claim and allowed it to proceed. (Dkt. 16.)[2] But, as with the Eighth Amendment and retaliation claims, there is a dispute of fact regarding how often Adams was denied breakfast and why he was denied breakfast. Adams, therefore, is not entitled to summary judgment on his equal protection claim.

### B. Defendants' Cross Motion for partial summary judgment

In their Cross-Motion for Partial Summary Judgment, the Defendants argue that Adams has not established that Defendants Shaw, McKinney, Colestock, Mason, Reynolds, Reed, Slinkard, or Davis were personally involved in the deprivation of his constitutional rights. They point out that it is well established that liability pursuant to 42 U.S.C. § 1983 does not attach unless

---

[2] In their Reply, the Defendants acknowledge their mistake and state that their assertion was an oversight. Defendants apologized to the Plaintiff and the Court for the error. (Dkt. 111 at 4.)

an individual actually caused or participated in a deprivation of rights, either by direct action or by approval of the conduct of others – vicarious liability cannot support a Section 1983 claim. (Dkt. 104 at 7). *See Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Wolf-Lille v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *Moore v. State of Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993) (liability under Section 1983 must be based on personal responsibility, not respondeat superior); *Zimmerman v. Tribble,* 226 F.3d 568, 574 (7th Cir. 2000) (citing Starzenski v. City of Elkhart, 87 F.3d 872, 879 (7th Cir.1996)); *Burks v. Raemisch*, 555 F. 3d 592, 596 (7th Cir. 2009). The statute does not create a general respondeat superior or supervisory claim for liability. *Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008); *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001).

The Defendants' arguments are well taken.  As explained in section A (1) above, Adams has failed to identify any genuine dispute of material fact, supported by admissible evidence, to show that Defendants Shaw, McKinney, Colestock, Mason, Reynolds, Reed, Slinkard, and Davis violated his constitutional rights, thus, they are entitled to summary judgment as a matter of law on all claims pending against them.

**C.     Motion for Ruling on Unopposed Motion for Summary Judgment**

Adams has also filed a Motion asking the Court to grant summary judgment with respect to Defendants Brantley Ferguson ("Ferguson") and Grant Stevens ("Stevens").  He argues these two defendants failed to timely respond to his Motion for Summary Judgment, thus the motion is unopposed and should be granted.  However, the docket reflects that Ferguson and Stevens, who are proceeding *pro se*, were not served with a copies of Adams' Motions. Accordingly, Adams' Motion for Ruling on Unopposed Motion for Summary Judgment, (Dkt. 107), is **denied** because Defendants Ferguson and Stevens have not been served with the Motion for Summary Judgment.

## IV.  CONCLUSION

For the foregoing reasons, Adams' Motion for Summary Judgment, Dkt. [97], is **DENIED,** and his Motion for Ruling on Unopposed Summary Judgment, Dkt. [107] is **DENIED**. The Defendants' Cross-Motion for Partial Summary Judgment, Dkt. [103], is **GRANTED**. All claims against Defendants Shaw, McKinney, Colestock, Reynolds, Reed, Slinkard, and Davis are **dismissed**.  The **Clerk shall terminate** these Defendants on the docket. No partial final judgment shall issue as to the claims resolved in this Order.

The claims against Defendants Stevens, Burns, Hibbard, and Ferguson, shall proceed.  If Adams wishes to request that the Court attempt to recruit counsel to represent him for further proceedings in this case, he should file a motion on the for that this Court uses for recruitment of counsel.  The **Clerk shall include** a form motion for assistance with recruiting counsel with his copy of this Order.

**SO ORDERED.**

Date: 2/22/2021

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Nathan L. Adams, #112090
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Benjamin Charles Wade
INDIANA ATTORNEY GENERAL'S OFFICE
ben.wade@atg.in.gov

Grant Stevens
Grant Stevens Address at dkt. 72

Brantley Ferguson
Brantley Ferguson Addresses at dkt 74-1, p. 2